# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ronald Osborn, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>                v.<br><br>Arch Insurance Company, and<br>Out of Towne, LLC, d/b/a Red Sky Travel Insurance,<br>                Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## Introduction

1.     Defendants sell "Ski Pass Preserver" insurance to consumers. This insurance covers the loss or interruption of season ski pass benefits.





**Policy Highlights**

Ski Pass Preserver offers the broadest limits:

- Reimbursement for the cost of a Season Pass less any refunds you received when you are unable to use your Season Pass due to a covered unforeseen reason.
- Reimbursement for the pro-rated cost of the Season Pass less any refunds you received when you are unable to use the remaining portion of your Season Pass due to a covered unforeseen reason.

https://redskyinsurance.com/products/ski-pass-preserver/

1

2. In March, ski resorts throughout North America closed, in response to the COVID-19 pandemic and government stay-at-home or shelter-in-place orders. Policyholders lost all season pass benefits for the rest of the ski season (about one-third of the season).

3. Defendants have universally and unreasonably denied coverage for this loss of ski pass benefits. Plaintiff brings this case on behalf of himself and similarly situated others, seeking just compensation for Ski Pass Preserver policyholders.

**Parties**

4. Plaintiff Ronald Osborn is domiciled in Riverside, California.

5. The proposed class includes all individuals nationwide who purchased Ski Pass Preserver insurance for the 2019-2020 ski season. The proposed class includes individuals domiciled in a number of different states.

6. Defendant Arch Insurance Company (d/b/a Arch Insurance Solutions) ("Arch") is a Missouri corporation. As listed in the Sky Pass Preserver policy, its principal place of business is 300 Plaza Three Jersey City, New Jersey, 07311.

7. Defendant Red Sky Travel Insurance ("Red Sky") is an assumed name for Out of Towne, LLC. Out of Towne, LLC is a Virginia LLC. The Virginia Secretary of State website lists Laird Sager as Manager. The Red Sky website lists a mailing address in Kitty Hawk, North Carolina and lists a North Carolina contact number for Mr. Sager. Mr. Sager's Linkedin profile identifies him as the "Founder/President" of Red Sky and lists his location as Kitty Hawk, North Carolina. Based on this information, Plaintiff believes that Mr. Sager is the Member of Red Sky and that he is a citizen of North Carolina (domiciled in North Carolina).

**Jurisdiction and Venue**

8. This Court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A). This matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from any one of the Defendants.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District. As alleged above, Arch has offices in New Jersey. Arch and Red Sky market and sell Ski Pass Preserver policies to New Jersey residents.

**Facts**

10. Plaintiff's Ski Pass Preserver policy is attached as Exhibit A.

11. The policy language and relevant coverage is materially similar for each class member.

12. Plaintiff paid for his policy when he purchased an Ikon season ski pass from www.ikonpass.com. Plaintiff paid a $37.14 premium.

13. Each class member paid his or her full premium, either through the purchase of an Ikon season ski pass, the purchase of another ski pass, or other means.

14. In exchange for this premium, Defendants provided Plaintiff and each class member with the coverage described in the policy.

15. Both Red Sky and Arch are direct parties to the policy with plaintiff and each class member. The policy states that it is underwritten by Arch Insurance Company and that claims are administered by "Red Sky Travel Insurance c/o Arch Insurance Company." In the alternative, Red Sky is the agent of Arch and Arch is the party to the policy.

3

 

**SKI PASS PRESERVER**

Underwritten By:
Arch Insurance Company
Administrative Office: 300 Plaza Three
Jersey City, NJ 07311

Administered By:
Red Sky Travel Insurance
c/o Arch Insurance Company
Executive Plaza IV
11350 McCormick Rd., Suite 102
Hunt Valley, MD 21031
Phone: 1-866-889-7409
Fax: 1-443-279-2901
Email: redsky@archinsurance.com
Office Hours: Monday-Friday, 8:30am – 5pm EST

16. Coverage decisions are made by Arch and adopted by Red Sky or, in the alternative, made jointly by Red Sky and Arch. Claims decisions come from an Arch Insurance Company email address (redsky@archinsurance.com). Claim denial letters state that "Red Sky Claims are administered by Arch Insurance Company" and bear the logo of "Arch Insurance Solutions" (a trade name for Arch Insurance Company). The listed address for the "Red Sky Claims" department is an Arch Insurance Company address (11350 McCormick Road, Suite 102 Hunt Valley, MD 21031 USA). The Red Sky website for filing claims has the logo "Powered by Arch Insurance Solutions."

17. In March of 2020, to prevent the spread of COVID-19, state and local governments issued stay-at-home or shelter-in-place orders. Ski resorts throughout North America (including all Ikon season pass resorts) closed, with no plans to reopen. The resorts closed well before the end of the ski season. For example, the season at Winter Park typically runs into late April or May or later. The season at Mammoth Mountain, California typically runs into June or July or later.

18. The Ski Pass Preserver policy provides coverage if policyholders are "quarantined." The term "quarantine" is not a defined term. In this situation, this term must be

4

construed against the insurer and in favor of coverage. The meaning of "quarantine" encompasses government shelter-in-place or stay-at-home orders and resort closures designed to prevent the spread of the COVID-19 pandemic. Accordingly, the policy language compels coverage.

19. In addition, the policy provides coverage if a policyholders' "primary place of residence or destination is made Uninhabitable." "Unhabitable" includes "immediate safety hazards have yet to be cleared" or "under an order of mandatory evacuation by local government authorities." The spread of COVID-19 posed an immediate safety hazard at both Plaintiff's and class members' primary residence or ski destination and this hazard has not been cleared. In addition, ski resorts ordered closed by state or local governments were "under an order of mandatory evacuation." This compels coverage for the resulting loss of season pass benefits.

20. Under the policy, Plaintiff and class members are entitled to reimbursement of the "pro-rated cost of the remaining portion of the Covered Season Pass purchased."

21. Plaintiff filed a claim and proof of loss, through the Red Sky online claims portal, on April 27, 2020. Exhibit B. That same day he received email confirmation from Red Sky that it had received his claim.

22. On May 11, 2020, Plaintiff received a letter from Defendants denying his claim. The letter contended, in part:

> There are no benefits under a travel insurance policy for shelter-in-place or stay-at-home orders issued as they are not quarantines as defined by the CDC. These orders are intended to reduce harm from the spread of coronavirus in a community. Unlike quarantines, there are many exceptions provided under these orders that permit one to leave their homes for essential activities including but not limited to, seeing a doctor for medical care, grocery shopping, pick up carry out orders from restaurants, to bike or run, so long as social distancing is practiced.

23. The letter cited a purported CDC definition of quarantine that does not apply unless a policyholder is forbidden from leaving their home, under any circumstances. There is

no such CDC definition in the policy. And as Defendants knew, an undefined term must be construed in favor of coverage.

24. Defendants were aware that coverage was compelled by the "quarantine" provision. In the alternative, Defendants were willfully blind to this fact. In the alternative, Defendants recklessly disregarded a high risk that coverage was required.

25. Defendants were aware that coverage was additionally compelled by the "Unhabitable" provision. In the alternative, Defendants were willfully blind to this fact. In the alternative, Defendants recklessly disregarded a high risk that this provision compelled coverage.

26. Defendants have universally denied claims caused by stay-at-home or shelter-in-place orders and the closure of ski resorts. It is public knowledge that Defendants are denying claims, for example, in complaints to the Better Business Bureau, newspaper articles, and posts on popular internet forums like Reddit.

27. Defendants have been dissuading policyholders from filing claims by informing policyholders who contact Defendants that claims caused by resort closures, stay-at-home orders, or shelter-in-place orders are not covered. In addition, at the direction of Defendants, or based on Defendants' statements, Ikon Pass representatives have been telling Ikon Pass holders that insurance will not cover such claims.

## Class Action Allegations

28. Plaintiffs bring this action on behalf of the proposed class of: all individuals nationwide who purchased Ski Pass Preserver insurance for the 2019-2020 ski season.

29. The following people are excluded from the class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its

parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

30. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. For example, Ski Pass Preserver insurance was offered together with Ikon Pass season ski passes (offered by Alterra Mountain Company). Alterra Mountain Company has projected that it sold over 250,000 Ikon passes for the 2019-2020 season. This means that, conservatively, there are tens of thousands of policyholders. In addition, there are policyholders who purchased Ski Pass Preserver insurance independently of Ikon Pass.

**Commonality.**

31. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

    i. The terms of the contract formed between class members and Defendants;

    ii. Whether Defendants breached this contract by failing to provide coverage;

    iii. Damages needed to reasonably compensate class members;

    iv. Whether Defendants acted in bad faith by denying coverage.

**Typicality.**

32. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Ski Pass Preserver insurance. Like the proposed class, Plaintiff lost his ski

7

pass benefits due to resort closures and stay-at-home orders. Plaintiff alleges the same breach, and other claims, as the proposed class. Plaintiff seeks the same type of relief.

**Adequacy.**

33. Plaintiff will fairly and adequately protect the interests of the proposed class. Plaintiff's interests are aligned with the interests of the proposed class members: Plaintiff seeks damages for Defendants' breach and other alleged wrongs. Plaintiff is represented by experienced class counsel who are prepared to vigorously litigate this case through judgment and appeal. There are no conflicts of interest between Plaintiff and the class.

**Predominance and Superiority.**

34. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same insurance policy is found for some proposed class members, but not others, or that bad faith is found for some coverage decisions, but not other identical decisions.

35. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, core liability questions are common: whether Defendants breached their contract with class members by denying coverage and whether Defendants denied coverage in bad faith.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to litigate class members' individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

37. The proposed class is readily ascertainable. The number and identity of class members can be determined with specificity from Defendants' sales and policyholder records.

## Claims

### Claim 1: Breach of contract

38. Plaintiff alleges this claim individually and on behalf of the proposed class.

39. Plaintiff incorporates the allegations in paragraphs 1 - 37 above.

40. Defendants entered into a contract with Plaintiff, and each class member, to provide insurance coverage for the loss of ski season pass benefits.

41. Plaintiff and each class member have paid the full premium and performed all contractual obligations.

42. Defendants breached the contract by denying coverage for the loss of season pass benefits due to COVID-19 related stay-at-home or shelter-in-place orders and the closure of resorts.

43. Defendants' breach was the proximate cause of, and a substantial factor in, causing loss and damages to Plaintiff and each class member.

### Claim 2: Breach of the implied covenant of good faith and fair dealing

44. Plaintiff alleges this claim individually and on behalf of the proposed class.

45. Plaintiff incorporates the allegations in paragraphs 1 - 37 above.

46. Defendants had an implied duty of good faith and fair dealing associated with the policy.

47. Defendants breached this duty by unreasonably applying a narrow definition of "quarantine" so as to deprive Plaintiff and each class member of policy benefits.

48. Defendants breached this duty by unreasonably failing to consider and recognize coverage under the "Uninhabitable" provision, so as to deprive Plaintiff and each class member of policy benefits.

49. Defendants breached this duty by unreasonably failing to search for evidence of coverage, so as to deprive Plaintiff and each class member of policy benefits.

50. Defendants breach was the proximate cause of, and a substantial factor in, causing losses and damages to Plaintiff and each class member.

### Claim 3: Bad Faith

51. Plaintiff alleges this claim individually and on behalf of the proposed class.

52. Plaintiff incorporates the allegations in paragraphs 1 - 37 above.

53. Defendants' coverage decision was not fairly debatable. Defendants either knew that they had no reasonable basis to deny coverage, were willfully blind to this fact, or recklessly disregarded the lack of a reasonable basis to deny coverage.

54. Defendants' bad faith was the proximate cause of, and a substantial factor in, causing losses and damages to Plaintiff and each class member.

55. Defendants' conduct was wantonly reckless or malicious. Defendants denied claims knowing that the claim should be covered. In the alternative, Defendants remained willfully blind to coverage. In the alternative, Defendants recklessly disregarded a high probability that claims were covered.

### Claim 4: Unjust enrichment

56. Plaintiff alleges this claim individually and on behalf of the proposed class.

57. Plaintiff incorporates the allegations in paragraphs 1 – 37 above.

58. Defendants received a benefit (premiums) at Plaintiff's and each class member's expense.

59. It would be unjust for Defendants to retain full premiums while wrongly denying coverage under the policy.

60. In addition, it would unjust for Defendants to retain full premiums given that ski resorts closed long before the end of the ski season, relieving Defendants from the risk of covering any other claims under the policy (e.g., the loss of pass benefits due to injury).

61. Defendants unjust conduct was the proximate cause of, and a substantial factor in, causing losses and damages to Plaintiff and each class member.

## Jury Demand

Plaintiffs demand a jury trial on all issues so triable.

## Prayer for Relief

Plaintiff seeks the following relief for himself and for the proposed class:

a) An order certifying the asserted claims, or issues raised, as a class action;

b) An order declaring that class members are covered for the loss of their ski passes;

c) An injunction requiring Defendants to inform class members that they are covered for the loss of their ski passes;

d) A judgment in favor of Plaintiff and the proposed class;

e) Compensatory damages;

f) Punitive damages;

g) Restitution;

h) Rescission;

i) Disgorgement, and other just equitable relief;

j) Pre- and post-judgment interest;

k) Reasonable attorneys' fees and costs;

l) Any additional relief that the Court deems reasonable and just.

Dated: May 26, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**


By: _/s/ Andrew Obergfell_
      Andrew Obergfell

Andrew Obergfell
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aobergfell@bursor.com

**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ykrivoshey@bursor.com

**DOVEL & LUNER, LLP**
Jonas Jacobson (*pro hac vice* forthcoming)
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Fax: 310-656-7069
E-mail: jonas@dovel.com

*Counsel for Plaintiff*